Octavino Trevino v. The State.

No. 4875.   Decided February 13, 1918.

Rehearing granted June 5, 1918.

**1.—Murder—Indictment—Practice in District Court.**

Where, upon appeal from a conviction of murder, the appellant contended that on the trial of the case the indictment was not read to the jury by the district attorney, which question he raised for the first time in his motion for a new trial, but the records showed to the contrary, there was no reversible error.

**2.—Same—Confesson—Witness Under Rule—Interpreter.**

Upon trial of murder there was no error in permitting the Spanish inter- preter to testify as to the confessions of the defendant because he had not been placed under the rule, the record showing that the rule had not been substantially violated and, besides, said confession was proved by other testimony without objection.

**3.—Same—Evidence—Bill of Exceptions—Custom.**

Where the bill of exceptions objecting to testimony as to a certain custom among Mexicans at a dance did not disclose the answers to the questions pro- pounded, and besides all this character of testimony was withdrawn from the jury by the charge of the court, and was moreover harmless, there was no re- versible error.

**4.—Same—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the evidence failed to raise the issue of provoking the difficulty, it was reversible error on part of the court to submit a charge thereon.   See opinion for facts which do not raise the issue of pro- voking the difficulty.   Prendergast, Judge, dissenting.

**5.—Same—Rule Stated—Provoking Difficulty—Self-defense.**

Provoking the difficulty is always in direct conflict with justifiable homi- cide and is not permissible unless the accused by his acts, conduct or words occasions or produces a difficulty, and these must precede and lead to the homi- cide; otherwise, a charge limiting the right of perfect self-defense would con- stitute reversible error, and provoking a difficulty by the deceased as in the instant case can never be used to limit the doctrine of self-defense.   Prendergast, Judge, dissenting.

**6.—Same—Cases Stated—Provocative Language.**

Where the accused was not in the wrong originally, but during the progress of the difficulty used provocative language, it would not be considered as pro- voking the difficulty.   Prendergast, Judge, dissenting.

Appeal from the District Court of Tom Green.   Tried below before the Hon. C. E. Dubois.

Appeal from a conviction of manslaughter; penalty, two years im- prisonment in the penitentiary.

The opinion states the case.

*Anderson & Upton,* for appellant.—On question of reading indict- ment to jury:   Wilkins v. State, 15 Texas Crim. App., 420; Essary v. State, 53 Texas Crim. Rep., 596, 111 S. W. Rep., 927.

On question of provoking difficulty:   Martinez v. State, 197 S. W.

Rep., 872; Humphrey v. State, 73 Texas Crim. Rep., 443, 165 S. W. Rep., 589; Rogers v. State, 159 S. W. Rep., 49; Johnson v. State, 67 Texas Crim. Rep., 441, 149 S. W. Rep., 165.

*E. B. Hendricks,* Assistant Attorney General, and *J. Thomas,* District Attorney, for the State.—On question of provoking difficulty: Bests v. State, 61 Texas Crim. Rep., 551, 135 S. W. Rep., 581; Mason v. State, 72 Texas Crim. Rep., 501, 163 S. W. Rep., 66; Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299; Gray v. State, 61 Texas Crim. Rep., 454, 135 S. W. Rep., 1179; Stanley v. State, 193 S. W. Rep., 151.

PRENDERGAST, Judge.—Appellant was indicted and tried for the murder of Luis Sepulveda and was convicted of manslaughter with the lowest punishment assessed.

He contends that on the trial the indictment was not read by the district attorney to the jury. The question was in no way raised until by motion for new trial after the verdict and judgment. The court heard the testimony on this ground of the motion. It was proved that the jury was regularly empaneled, sworn and took their seats in the jury box; that the witnesses were then sworn, ordered under the rule, but the district attorney called his first witness, who took the stand; that the district attorney, as the two attorneys for the appellant swore, in substance, then announced that he would arraign the defendant. That the defendant was then ordered to stand up, which he did, and the district attorney, about equi-distant from the jury, judge and the appellant, read the indictment in English, and the court asked him whether he was guilty or not guilty, and he answered something in Spanish. Upon the suggestion, then, that the appellant did not understand English the indictment was given to the court interpreter and he read it in Spanish and that the defendant then plead not guilty; that the indictment was not again read by the district attorney to the jury specially. One of the attorneys for the prosecution swore that at the time and under the circumstances stated, after the jury had been empaneled and sworn, the witnesses sworn and placed under the rule, and one witness who had been called, took the stand, that the district attorney said, "I will read the indictment before the jury, where they can hear it, and the defendant can be arraigned at the same time." And that the district attorney then read the indictment in English and that upon the suggestion that the appellant could not understand English, that he handed the indictment to the court interpreter and the court interpreter read and explained it to the defendant in Spanish and that the appellant pleaded not guilty. The court stenographer swore substantially to the same thing. The trial judge, after hearing the testimony, correctly overruled the motion for new trial on that ground. The testimony clearly authorized him to do so.

Appellant has another bill in which he complains that the court per-

mitted the Spanish interpreter to testify, proving up the confession by appellant. He objected to the witness testifying at all on the ground that as the rule had been invoked and the interpreter had been in the courtroom and heard the testimony of the other witnesses he was in-competent to testify. The court's explanation of the bill stated that prior to the time said witness testified no other witness in the case had testified concerning the fact so testified to by said witness, or to facts relating to the same. Moreover, the confession was proven by other witnesses without any objection, and appellant himself testifying, swore that he had signed the confession and it was his signature thereto and it was read over to him before he signed it. The action of the court in permitting the interpreter to testify under the circumstances presents no error.

Appellant has two other bills, one complaining that the court permitted Jose Chapoy to testify that there was a custom among the Mexicans by which if a girl declined to dance with one boy that she should not dance with other boys during that night. The other is that the district attorney was permitted to ask appellant himself, when testifying, "You know that your sister had declined to dance with Frank Robles before that conversation, didn't you?" and "You know it is a rule among Mexicans, do you not, that if a lady declines to dance with one partner at a dance, that she does not dance with any other partner that night?" To which he answered that he did not know his sister had declined to dance with Frank Robles, and that he did not know whether or not any such custom prevailed among Mexicans. No other explanation of the surroundings or circumstances under which these questions were asked or answered is disclosed by either one of the bills. The court qualified each of them with the explanation that after it developed in defendant's testimony, testifying in his own behalf, that he did not know whether there was such a custom or not then all this character of evidence was withdrawn from the jury by a special charge which was given.

Considering the whole record of the testimony, these questions and answers had no special bearing upon any material question in the case. As the whole matter was withdrawn from the jury by the written charge of the court, neither of the bills present reversible error.

Appellant contends that the testimony did not raise the question of provoking the difficulty and that, therefore, the court erred in submitting that issue to the jury. The statement of facts has been carefully read and studied and we are of the opinion that the evidence does raise the issue and that the court did not err in submitting it to the jury. No complaint is made of the charge on the subject. But a brief statement of the testimony is necessary on this point.

There was a Mexican dance at the house of Lucas Chapoy. The deceased was Chapoy's step-father and had charge, and was master of ceremonies at the dance. Appellant's sister attended the dance and was one of the lady dancers. After the dance had been in progress for

several hours, at about midnight, one of the men, Frank Robles, it seems, engaged her for a dance, but before that dance commenced he was called off or went off from her. Thereupon Andreas Pineda asked her to dance with him and she started to do so. Thereupon Robles interfered and objected to her dancing with Pineda. At Robles' request she declined to dance with Pineda and took her seat. About this time appellant, who had been outside, came in and asked his sister what was happening. She told him nothing, but he understood at the time what had transpired and he was discussing the matter with the parties when deceased came up and either put his hand on appellant's shoulder or struck him on the shoulder and objected to his interfering with the dancing. Thereupon appellant in substance said to him if he was a man to come out of the house, and he himself then went out and deceased followed him out. They got out to the end of the gallery and· with some further talk between them deceased shoved him off the gallery. He then called deceased a "son of a harlot," a most insulting epithet. Whereupon deceased immediately undertook to assault him with his hands alone. The overwhelming proof showed that deceased had no knife and no other arms whatever. Appellant backed off to about two-thirds of an eighty-foot street when he began shooting at deceased and continued to do so until he shot him down and killed him. This testimony raised the issue of provoking the difficulty.

It is hard to conceive of a greater insult to a man than have another tell him that he is a "son of a harlot." One giving such an insult is bound to know that the party thus insulted will resent it and at once strike him or attempt to strike him, and as said by Judge Hurt in Polk v. State, 30 Texas Crim. App., 657, "Though he may not have intended to produce the occasion or provoke the difficulty, yet this would be the reasonable and natural consequence of his act, for which, by the law, he is held responsible, and responsible to the same extent as if he had intended to provoke the difficulty." See also 2 Branch's Ann. P. C., section 1953, where he lays down the correct doctrine applicable herein and collates a large number of cases in point.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### June 5, 1918.

DAVIDSON, PRESIDING JUDGE.—The opinion heretofore rendered is attacked in a motion for rehearing on the proposition that the issue of provoking a difficulty by appellant was not in the case nor borne out by the facts, and that his right of self-defense was by the charge illegally curtailed by this charge.

Provoking a difficulty is always in direct conflict with justifiable homicide, and is not permissible unless the accused by his acts, conduct or words occasioned or produced the difficulty. When perfect self-

defense is relied upon by the accused there should be, as a prerequisite to its impairment, evidence that the accused produced the occasion for the killing as an excuse for the homicide. His acts, conduct or words must precede such condition and must be evidenced by the testimony. This is the law under correct legal views and under the well considered jurisprudence of this State. These facts must precede and lead to the homicide. If the difficulty does not so begin, provoking the difficulty is not a part of the case, and a charge limiting the right of perfect self-defense would constitute error, and of such a nature as to constitute its giving necessarily fatal to the conviction. If the deceased began or provoked the difficulty, that issue is not in the case. Provoking a difficulty by the deceased can never be used to limit the doctrine of self-defense. That doctrine pertains, under the rules of self-defense, only to the accused. Provoking a difficulty by deceased can not be utilized by the State, therefore, to defeat or impair the right of self-defense in homicide. Mutual combat and abandonment of the difficulty are not here involved; at least so far as the foregoing statements are concerned. We are not discussing those issues. It would serve no useful purpose to cite or discuss cases on either proposition.

A careful review of the record, from an evidentiary standpoint, has convinced us that we were in error in sustaining the judge of the trial court in giving a charge upon provoking the difficulty, and thus limiting appellant's perfect right of self-defense. Briefly stated, in this connection the evidence discloses that this trouble arose at a Mexican dance, which seems to have been under the management or supervision of the deceased. That a sister of appellant attended the dance; that she had an engagement to dance with one of the attendants; that he for some purpose or reason left the room; that the sister then accepted the companionship of another attendant and went upon the floor for the purpose of dancing; that about this time her first accepted partner returned and demanded that she either dance with him or retire from further participation in the dance for that evening. It became a question as to whether or not it was the custom at Mexican dances for girls to retire from dancing on such occasions under the stated custom. There was evidence pro and con with reference to this. At this juncture appellant came upon the scene.. This matter was under discussion. The two partners above mentioned and the girl, it seems, were in conversation, or at least there was a conversation going on with the three present. Appellant asked what happened and was informed of the nature of the trouble and controversy. He thereupon suggested that his sister should dance with one of the offered partners, and when this set was danced, then she should dance with the other. This was suggested in a spirit of compromise and to avoid trouble. Just "then deceased came in and pushed Octavino (appellant) aside and told him not to intrude in business that was not his own, and to get out." The deceased then struck appellant on the shoulder and said, "What are you

discussing—you fool, what are you intruding yourself into business
that don't pertain to you?" and pushed him further aside and said:
"What have you to do is to go out." This was the beginning of the
trouble. They both left the room and went upon the porch. It ·is an
issue under the testimony as to which extended the invitation to come
upon the porch. This occurred, however, after the conduct of the de-
ceased in the room and after striking and pushing the defendant and
using the language above imputed. While on the porch deceased shoved,
pushed or knocked defendant off the gallery. It seems up to this point
defendant had said nothing nor spoken a word to deceased. It is true,
however, in appellant's statement of the trouble he says: "Luis told
me to shut up and told me to get out of the house, that I was not
worth anything, and struck me on the shoulder with his fist. I went
out on the porch, and Luis came out just behind me. After Luis had
hit me I told him if he was a man to come out of the house." Prior
to the time that deceased pushed, shoved or knocked appellant off the
gallery deceased had made an assault upon him before defendant had
said anything to him or concerning him.

In view of what was said above about provoking a difficulty, the lan-
guage imputed to appellant after he was struck, that if he (deceased)
was any man he would come out on the gallery, would not be considered
as provoking a difficulty. The difficulty had already begun at the in-
stance of deceased. What occurred after defendant was pushed or
knocked off the gallery by deceased is conflicting under the testimony.
Some of the witnesses say defendant called deceased a "son of a harlot."
Others did not hear this. Witnesses agree that after deceased had
knocked appellant from the gallery that he made a spring toward de-
fendant and defendant broke to run and ran about two-thirds of the
distance across an eighty-foot street, with the deceased following him,
striking at him before the fatal shot was fired. Appellant made a state-
ment or confession. In this he states deceased was striking at him with
his fists. Then follows this quotation from his statement or confession:
"I do not know whether or not he had a knife or any weapon. He was
running after me, and when we were almost across the street I pulled
my pistol and shot at him three times." Appellant testifying before the
jury in his own behalf stated, substantially, that while he was on the
porch deceased struck him again with his fist and he fell down, and as
soon as he did that deceased put his hand in his pocket and jumped
after him, and he ran across the street, and was running because de-
ceased put ·his hand into his pocket and he thought was going to pull
a knife, and would strike or stab him with it; that deceased was still
coming after him, and was in about two or three feet of him when he
fired; that deceased did not hurt him with a knife or reach him.. He
further stated that he was running while he was shooting. He uses this
further language: "I shot Luis because I understood that he was very
angry and he was trying to kill me. I was afraid of him. I was

scared—if he should have killed me, I would not have remained alive." There seems to have been conflict in the testimony as to whether or not deceased had a knife. Some of the evidence is to the effect that he did have a knife and witnesses saw him get it. Others did not see this. Others testified deceased had no knife in the evening preceding the homicide and they found no knife about his person.

We are of opinion that this testimony does not raise the issue of provoking the difficulty. Usually the language that some of the witnesses impute to defendant, that deceased was the "son of a harlot," would be considered a provocation, and had it been used at the beginning of this difficulty and the inducing cause it would have been treated as a cause upon which provoking a difficulty could be grounded. But as before stated, provoking a difficulty must precede and be the occasion of bringing about the difficulty. Where the accused is not in the wrong originally, but during the progress of the difficulty he uses such language, it would not be considered as provoking a difficulty. Provoking a difficulty, as before stated, is based upon the proposition that the accused does some act or perform some conduct, or uses such words as would occasion or provoke a difficulty, and with that purpose in view. If the deceased provoked the difficulty and during its progress the defendant does something that would have produced the difficulty had it been used prior to the difficulty, the question of provoking a difficulty would arise, but the facts we think do not justify that conclusion, and, therefore, the court was in error in submitting that issue to the jury, thus curtailing appellant's right of self-defense.

Believing that we were in error in affirming the judgment heretofore, the motion for rehearing is granted, the judgment of affirmance is set aside, and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE.—The original opinion holding provoking the difficulty was raised by the testimony is undoubtedly correct, and the motion for rehearing should be overruled. I dissent from this opinion holding otherwise.