Billy Wayne MATTHEWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 83 165 CR.

Court of Appeals of Texas,
Beaumont.

Aug. 23, 1984.

Rehearing Denied Oct. 17, 1984.

Petition for Discretionary Review
Filed Nov. 14, 1984.

Michael A. McDougal, Conroe, for appellant.

James H. Keeshan, Dist. Atty., Conroe, for appellee.

## OPINION

McNICHOLAS, Justice.

Appellant was convicted by a jury of the offense of murder and the court assessed his punishment at confinement for life. Appellant does not challenge the sufficiency of the evidence to support the jury verdict.

On September 27, 1982, at 5:30 P.M. Debbie Peterson discovered the body of her 75 year old uncle and employer, Ernest Newton Oakley, lying in the ransacked bedroom of the building which served as Oakley's real estate office and residence. He had last been seen alive at 12:30 P.M. that day by his son.

Detective Charles Burks, in charge of the investigation, made a thorough inspection of the crime scene. He noted blood on the doorway of the bedroom, on the sheets of the bed, on the floor and on the body of the deceased. The mattress was knocked out of line with the box springs, several drawers had been pulled out of the dresser, and the telephone was on the floor. The cord from the base to the wall had been severed with a sharp instrument. Oakley's left hand pants pocket was pulled out. The injuries inflicted upon Oakley consisted of ten stab wounds to the chest, fourteen stab wounds to the upper back, one stab wound to the hand, an abrasion in the middle of the forehead and abrasions around the chin and throat. The medical examiner later testified that the stab wounds were from 2 inches to 4 inches deep. Missing from the office were keys to the front door, the victim's wallet and a Crossman air pistol.

At the time of appellant's arrest, the officers recovered from his house a blood soaked pair of pants and shirt, the front door key to Oakley's office, and Oakley's air pistol. Following his arrest, appellant was given the proper warnings by the Justice of the Peace. After receiving the warnings, appellant admitted he had stabbed Oakley and proceeded to lead the officers near Oakley's office where Oakley's wallet and the murder weapon was found. Later that evening appellant gave a written confession in which he admitted to stabbing Oakley to death and then taking his wallet containing approximately five hundred dollars and the air pistol.

Mr. Rick Findley, owner of R & R Pawn Shop in Porter, Texas, testified that appellant had previously pawned a pistol at his establishment and had returned in the early afternoon of the date of the murder to attempt to redeem it but did not have enough money. Appellant indicated that he would be back and an hour and a half or so later did return and redeemed his pistol with cash.

We shall first address appellant's second ground of error wherein he contends the court erred in its charge "by including the law on provoking the difficulty as a limitation of the Defendant's right of self-defense, as there was no evidence to support such a jury charge." The court charged the jury on self-defense, and also, over the objection that the issue was not raised by the evidence, charged on the issue of provoking the difficulty, which limits the right of self-defense.

██ We agree with appellant that a jury instruction on provoking the difficulty should not be submitted to the jury unless self-defense is an issue and there are facts in evidence which show that the deceased made the first assault on the defendant and the defendant, in order to have a pretext for killing or inflicting bodily injury upon the deceased, did some act or used some words intended to and calculated to bring on the difficulty. *Williamson v. State,* 672 S.W.2d 484 (Tex.Crim.App.1984); *Stanley v. State,* 625 S.W.2d 320, 321 (Tex.Crim. App.1981). However, we do not agree that the evidence is insufficient to raise the issue.

The only testimony in the record concerning the events immediately prior to the stabbing, and the actual stabbing itself, came from appellant. He testified that on the day of the homicide, he had gone to Oakley's office to discuss the purchase of a parcel of land. He testified that he wanted to buy the land and was prepared to make the down payment. On cross-examination, however, he admitted that he did not have a checking account or a savings account and the only money he had was $100.00 which he had in his pocket at that time. Oakley had quoted a price on a certain lot and they drove out to see the lot. Oakley then discovered the lot had been improved, which had been unknown to him. They returned to Oakley's office at which time

he told appellant the price of the lot, because of the improvements, would be more than previously quoted. This "frustrated" appellant and he began to argue about the unfairness of the increase in the price. Appellant continued to argue and acted "radical" when Oakley walked out of the office into his bedroom and then re-entered the office with an air pistol. Appellant was continuing to argue at this point and Oakley then stated that "he was going to blow me away if I didn't leave." Appellant "immediately jumped up out of the chair and grabbed the gun by the barrel and tried to force it out of his hands" and that "while that was happening, I reached in my pocket to pull my knife out." Appellant testified that "there was a scuffle and me and him both went to the floor." As a result of this scuffle, appellant inflicted twenty-four stab wounds to Oakley's chest and back. He then picked up Oakley's wallet and the air pistol from the floor and left the premises. After leaving the premises he removed the $500.00 from Oakley's wallet and threw the wallet and the murder weapon away. He proceeded to the pawn shop and redeemed his pistol which he had previously pawned. He admitted that he spent some of the money he had removed from Oakley's wallet.

The record reveals that Oakley was 75 years of age and weighed 153 pounds. Appellant was "six feet tall" and was 29 years of age and in good health. Appellant and Oakley began to argue and appellant continued the argument and acted "radical" toward Oakley until such time as Oakley ordered him to leave the premises. A reasonable inference from appellant's words and conduct would have reasonably provoked Oakley to order appellant to leave, and further that this 75 year old man could only accomplish this safely by arming himself ,before requesting this 29 years old man, who had been in continuous argument and displayed "radical" conduct, to leave his (Oakley's) home.

In every case where the acts and conduct of the accused were the cause of an attack upon him, the issue of whether they were reasonably calculated to provoke the difficulty is a question of fact for the determination of the jury under appropriate instructions from the court. *Garcia v. State*, 522 S.W.2d 203 (Tex.Crim.App.1975).

The evidence in this record is sufficient to raise the issue, and the court did not err in charging on provoking the difficulty. This ground is overruled.

Appellant, by his third ground of error, contends the court erred in "refusing to sustain Defendant's motions for mistrials [sic] based upon the fact that the jury could not agree upon a unanimous verdict, after deliberating for approximately eleven hours."

We shall take the time table for jury deliberations as stated by appellant in his brief. On February 2, 1983, the jury retired to deliberate appellant's guilt or innocence at 6:25 P.M. At 8:30 P.M. a dinner break was had for the jurors. From 10:00 P.M. until 2:00 A.M. on February 3, the jury continued deliberations. At 11:40 P.M., February 2, the jury advised that they were split 10 to 2 and asked what were they to do. The court advised them to continue deliberating. At 1:30 A.M., February 3, the jury advised that they were still 10 to 2; it did not appear there would be any change. Following the last vote by the jury at 1:30 A.M., appellant moved for a mistrial which was overruled.

At approximately 2:00 A.M., February 3, the court "recessed" the jury until 9:30 A.M., February 3, at which time they were to resume their deliberations. At 10:30 A.M., appellant moved for a mistrial on the ground that the jury was unable to reach a unanimous verdict, which was overruled. Again, at 12:05 P.M. on that day appellant moved for a mistrial.

The jury was recessed for lunch at 12:30 P.M. and returned at approximately 2:00 P.M. At 2:50 P.M. the jury returned a unanimous verdict. An entry by the court upon the trial docket sheet shows "Jury was polled & discharged."

■ The length of time that the jury may be held for deliberation rests largely

in the discretion of the court, and unless it is made to appear that the court abused its discretion in this regard, no reversible error is shown. See *Garcia v. State, supra; Johnson v. State,* 630 S.W.2d 291 (Tex. App.—Dallas 1981) *pet. ref'd,* 629 S.W.2d 953 (Tex.Crim.App.1982); *TEX. CODE CRIM.PROC.ANN. art. 36.31* (Vernon 1981).

■ During the course of this trial, seventeen witnesses testified and a total of 49 exhibits were introduced into evidence. The court's charge to the jury, which the jury had to consider during its deliberations consisted of instructions relative to murder, voluntary manslaughter, self-defense and provoking the difficulty. Under these circumstances, we cannot say the court abused its discretion by requiring the jury to deliberate for approximately 10 hours. This ground is overruled.

■ Appellant's fourth ground of error complains of error "in coercing the jury to reach a verdict on guilt/innocence by causing the jury to deliberate [for approximately 10 hours]." In his argument under this ground of error, appellant reiterates his argument made under the preceeding ground as to the length of time the jury deliberated. We held, under that ground of error, there was no abuse of discretion by the court. We hold here that such does not show any coercion on the part of the trial court.

■ In addition to the above argument, appellant attached to his motion for new trial affidavits of two jurors, both of which stated reasons for returning a guilty verdict. These affidavits are impermissible attempt to impeach their verdict. *Daniels v. State,* 600 S.W.2d 813 (Tex.Crim.App. 1980); *Holifield v. State,* 538 S.W.2d 123 (Tex.Crim.App.1976). This ground is overruled.

We have carefully considered appellant's first ground of error and finding the same to be without merit, it is overruled.

The judgment is affirmed.