Billy Wayne MATTHEWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1112–84.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 19, 1986.

Michael A. McDougal, William Adair, Conroe, for appellant.

James H. Keeshan, Dist. Atty., & Peter C. Speers, III, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

MILLER, Judge.

Appellant was convicted by a jury of the offense of murder, see V.T.C.A., Penal Code § 19.02, and the court assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant appealed the conviction to the Beaumont Court of Appeals. His conviction was affirmed in *Matthews v. State*, 691 S.W.2d 2 (Tex.App.—Beaumont, 1984). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in its disposition of appellant's second ground of error: that the evidence was sufficient to justify the trial court's charge to the jury on the issue of appellant's having provoked the difficulty.

The court of appeals held that a jury instruction on provoking the difficulty should not be submitted to the jury unless self-defense is an issue and there are facts in evidence which show that the deceased

made the first assault on the defendant and the defendant, in order to have a pretext for killing, did some act or used some words intended to bring on the difficulty, citing *Williamson v. State*, 672 S.W.2d 484 (Tex.Cr.App.1984), and *Stanley v. State*, 625 S.W.2d 320 (Tex.Cr.App.1981). The court of appeals concluded that the evidence was sufficient to raise the issue.

In order to evaluate appellant's contention, a brief recitation of the facts is necessary. Prior to his killing, Ernest Oakley was a 75 year old male who weighed 153 pounds. He sold real estate near New Caney. On September 27, 1982, his body was discovered by his niece, in the bedroom of the office in which he conducted business. The body was found on the bedroom floor, and the telephone receiver was found next to the deceased's hand. The telephone line had been cut with a sharp instrument. The body exhibited ten stab wounds to the chest, fourteen stab wounds to the upper back, one stab wound to the hand, and abrasions in the middle of the forehead and around the chin and throat. The bedroom had been ransacked, the dresser drawers were pulled out, and there was blood on the bed. The other rooms were in disarray, and blood was found in numerous locations throughout the office.

The State introduced appellant's confession, which included the following:

"[After returning to the deceased's office to discuss the purchase of a parcel of land] We began to argue about the price and I became kind of radical. Mr. Oakley then got up in the middle of the conversation and walked around the corner, to the room where the bed was. I got up from my chair and I was still hollering at him because I was mad. He came back into the room with a gun in his hand. I was still hollering at him and he pointed the gun at me and told me to get my ass out or he would blow me away. At that time I lost my head and I lunged for him and grabbed the gun and took it away from him by grabbing the barrel and pulling it toward me. Then I took my pocket knife out of my back

pants pocket. We were by the pool table and I stabbed him several times repeatedly and he started backing up into the room that had the bed in it. We were still struggling and I stabbed him several more times. ...:"

The only other evidence concerning the events immediately prior to the killing came from appellant when he took the stand. Appellant was 29 years old at the time of the offense, was six feet tall and in good health. He testified that he had gone to the deceased's office to discuss the purchase of an undeveloped parcel of land. The deceased gave appellant a purchase price of $4900.00, and they both drove to the location of the land. On their arrival, the deceased discovered that the land had been partially cleared. They drove back to his office, and the deceased increased the price by $1000.00 to account for the partial clearing. Appellant stated that the price was not fair, and the deceased told him not to tell him how to run his business. The two continued to argue about the price, and appellant "holler[ed]" at the deceased.

As the argument progressed, the deceased went into his bedroom, and returned with an air pistol in his hand. Appellant testified that the deceased "leveled the gun at [his] head and told [him] [that] ... he was going to blow [him] away if [he] didn't leave." Appellant stated that at that point, he "jumped out of the chair and grabbed the gun by the barrel and tried to force it out of his hands." Appellant took a Japanese lock-blade knife out of his pocket, and the two struggled to the floor. As a result of the struggle, appellant inflicted fourteen stab wounds to the deceased's back, and ten wounds to the deceased's chest. After the struggle, appellant picked up the deceased's wallet and removed $500.00. He took the money and the pistol, and left the scene. After driving a short distance, he threw the knife and the empty wallet away. He went to a pawn shop and retrieved a pistol he had pawned one month earlier.

On cross-examination, appellant testified that he was earning $1500.00 per month at the time of the killing. He had to make

child support payments for two prior marriages, which amounted to $305.00 per month, and paid $200.00 to rent a house. Appellant testified that he did not have a checking or savings account on the date of the killing, and only had $100.00 in cash. He stated that he had been forced to pawn his pistol earlier because he needed the money. The pistol needed to be taken out of pawn by the end of September.

When questioned about how appellant had spent the money he had taken from the deceased's wallet, he stated that he had spent $60.00 to get his pistol out of pawn. Afterward, he went home. Shortly thereafter, a man known to appellant only as "Butch" came to appellant's home to collect money appellant owed some unnamed persons. Appellant paid him $150.00, and he left.

When questioned about the events immediately prior to the killing, appellant testified that when he spoke to the deceased about purchasing a $5900.00 parcel of land, he was in dire financial straits. He testified that at the time he went to the deceased's office, he needed money in order to get his pistol out of the pawn shop.

After the two returned to the office and the argument ensued, appellant testified that when the deceased returned with the gun appellant tried to get it away from him, but was not strong enough to do so. Appellant could not remember the details of what transpired after he pulled out his knife.

During re-cross examination, the prosecutor showed appellant photographs of the office, specifically pointing out several doors through which appellant could have left after the deceased told him to leave. Appellant then admitted that he did not go to the deceased's office just to discuss a piece of real estate because he did not have any money to pay for it.[1]

Before the charge was read to the jury, appellant made the following objection to the charge:

"[appellant objects] to the inclusion in the Court's Charge of the issue on provoking the difficulty as a limitation to the defendant's right of self defense, as set forth on page six of the charge, for the reason that there is no evidence on which to base such a charge that the defendant provoked the difficulty with the deceased, Ernest Newton Oakley."

The portion of the charge referred to by appellant stated:

"You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force unless (a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (b) the other person, nevertheless, continues or attempts to use unlawful force against the defendant."

■ Generally, if the issue is not raised by the facts, a charge on provoking the difficulty constitutes an unwarranted limitation on the right of self-defense. *Williamson*, supra at 485, citing *Stanley*, supra. See also *Tave v. State*, 620 S.W.2d 604 (Tex.Cr.App.1981).

■ Viewing the evidence in the light most favorable to the verdict,[2] a charge on provoking the difficulty is properly given when:

1. Self defense is an issue;

2. There are facts in evidence which show that the deceased made the first attack on the defendant; and

1. Earlier, during re-direct examination by his attorney, appellant recanted his previous testimony that he had gone to the deceased's office to discuss a land purchase and stated that he actually wanted to visit his brother that afternoon. The record shows that appellant's brother lived "in close proximity" to the deceased's

office. The record is devoid of any other reason why appellant went to the deceased's office instead of his brother's home.

2. *Garcia v. State*, 522 S.W.2d 203 (Tex.Cr.App. 1975).

3. The defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased.

*Williamson,* supra; *Stanley,* supra; *Tave,* supra. This determination is limited to whether there is any evidence raising the issue. As was stated in *Norwood v. State,* 135 Tex.Cr.R. 406, 120 S.W.2d 806 (1938):

" . . . [I]f there be such evidence [that the defendant provoked the difficulty], it would be the duty of the court to submit the law of such issue, even though the trial court might believe the evidence on the part of the accused to rebut the theory of provoking the difficulty. The determination of whether the issue be sustained or rebutted would be for the jury." [citations omitted]

*Id.,* 120 S.W.2d at 809.

In the case at bar, there is no doubt but that appellant's main defense, which was raised by the evidence, was that of self-defense. Moreover, according to the evidence, the deceased made the first attack, so to speak, when he retrieved the air pistol, aimed it at appellant, and told him to leave. Whether the court erred by charging the jury on provoking the difficulty thus turns on whether by acts, words or deeds, appellant brought on the difficulty as a pretext to injure the deceased.

▮ Prior cases concerning the issue are of assistance to our evaluation of the facts in this case. Words alone may provoke the difficulty, thereby justifying a provocation charge. *Morrison v. State,* 158 Tex.Cr.R. 424, 256 S.W.2d 410 (App.1953). Also, a provocation charge has been held proper when there was evidence that the defendant cursed the victim, and the victim then attacked the defendant. *Tardy v. State,* 47 Tex.Cr.R. 444, 83 S.W. 1128 (App.1904). See also *Sanders v. State,* 83 S.W. 712 (Tex.Cr.App.1904).

▮ Cases where a provocation charge was not justified are also helpful. In *Williamson,* supra, the evidence showed only that the deceased began to argue with the defendant after the defendant told the deceased to leave the defendant's house. In cases such as *Tave,* supra, *Stanley,* supra, *Howle v. State,* 119 Tex.Cr.R. 17, 43 S.W.2d 594 (App.1931), and *Dugan v. State,* 86 Tex.Cr.R. 130, 216 S.W. 161 (App. 1919), the State's evidence showed an unprovoked attack upon the deceased by the defendant, and the defense evidence showed an unprovoked attack on the defendant by the deceased.

In the case at bar, the record shows that although appellant stated initially that he went to the deceased's office to discuss a land purchase, he later admitted that he had no money to purchase the land. Appellant was experiencing severe financial problems, and needed money to repay prior debts and get his gun out of pawn. In his confession, appellant admitted that he became "radical" when arguing with the deceased over the price of a piece of land which he had no intentions of buying. Appellant admitted that he was "hollering" at the deceased. The deceased retrieved his air gun, and told appellant to leave. Appellant did not do so, despite several exits available to him. According to the confession, appellant then grabbed the pistol away from the deceased, and subsequently stabbed him twenty-four times. Finally, after the deceased died, appellant stole $500.00 from his person.

We find that, when the previously cited cases are considered, and when the evidence is examined, the facts of this case did raise the issue that appellant may have intended to provoke the difficulty. Whether his actions were reasonably calculated to provoke the deceased was a proper question for the jury. Thus, the trial court did not err in submitting the charge to the jury. The Beaumont Court of Appeals did not err in so holding. Appellant's ground of review is therefore overruled.

We affirm the judgment of the court of appeals.

ONION, P.J., and CLINTON, J., dissent.

TEAGUE, Justice, dissenting.

By analogy I find that the majority opinion, in its apparent quest to reach a desired result, that the trial court did not err in impairing the appellant's perfect right of self-defense, mixes apples with oranges to get pineapple juice.

Provoking a difficulty is always in direct conflict with justifiable homicide. Thus, it is not permissible to impair the accused's right of self-defense unless the accused, by his acts, words, or conduct, occasioned or produced the original difficulty, unless it is established that although the deceased is shown to have been the one who commenced the difficulty, it is also established that during the progress of the difficulty the accused, through acts, words, or conduct, did something that would have produced the difficulty had it been used prior to the difficulty, i.e., during the progress of the difficulty, the true reason why the difficulty originally commenced is brought out.

In *Trevino v. State*, 83 Tex.Cr.R. 562, 204 S.W. 996, 997–98 (Tex.Cr.App.1918), the following was written: "When perfect self-defense is relied upon by the accused, there should be, as a prerequisite to its impairment, evidence that the accused produced the occasion for the killing as an excuse for the homicide. His acts, conduct or words must precede such condition, and must be evidenced by the testimony. This is the law under correct legal views and under the well-considered jurisprudence of this state. The facts must precede and lead to the homicide. If the difficulty does not so begin, provoking the difficulty is not a part of the case, and a charge limiting the right of perfect self-defense would constitute error, and of such a nature as to constitute its giving necessarily fatal to the conviction. If the deceased began or provoked the difficulty, that issue is not in the case. Provoking a difficulty by the deceased cannot be utilized by the state, therefore, to defeat or impair the right of self-defense in homicide."

It is now axiomatic that to constitute provocation such as will affect a person's right of self-defense, the acts, words, or conduct of provocation by the accused must occur at the time of, or immediately before, the difficulty. They must be the occasion for bringing about the difficulty. 21 *Tex. Jur.3rd, Section 1733.*

An exception to the rule that provoking the difficulty by the deceased cannot be taken advantage of by the State exists: "Where the accused is not in the wrong originally, but because, *during the progress of the difficulty,* he [does something by acts, words, or conduct], that would have produced the difficulty had it been used prior to the difficulty," *Trevino v. State,* supra, 204 S.W. at 999, (My emphasis), then the question of provoking the difficulty by the accused arises.

The majority opinion acknowledges that "according to the evidence, the deceased made the first attack." By using sheer speculation, it also finds that the appellant brought on the difficulty between himself and the deceased "as a pretext to injure the deceased." In so finding, it ignores the above principle that if it is shown that the deceased commenced the difficulty, then, unless it is also established that during the progress of the difficulty the accused did something, through acts, words, or conduct, that might reflect or indicate the real reason why the difficulty commenced, provocation is not in the case. This omission is what is wrong with the majority opinion.

Provoking a difficulty, however, as before stated, is based upon the proposition that the accused does some act or performs some conduct or uses words as would occasion or provoke a difficulty, and with that purpose in view causes the difficulty to commence. If the evidence reflects that the deceased commenced the difficulty, unless it is also established that the accused during the progress of the difficulty does something, by acts, words, or conduct, that would have produced the difficulty had it been used prior to the commencement of the difficulty, i.e., the true reason why the difficulty commences is brought out during the progress of the difficulty, then there can be no impairment placed upon the de-

**840**

fendant's perfect right of self-defense. *Trevino v. State,* supra, 204 S.W. at 999.

The majority opinion correctly points out that "... according to the evidence, the deceased made the first attack, so to speak..." Thus, the appellant was not in the wrong originally. Nevertheless, did he, *during the progress of the difficulty,* by any acts, words, or conduct do something that would have produced the difficulty had it been used prior to the difficulty arising? Under the facts and circumstances of this case, only in the latter instance would the question of the appellant provoking a difficulty arise.

The majority opinion does not point to any evidence or testimony in the record, and I cannot find any reference to any by the parties, that *after* the deceased made the initial attack upon the appellant, the appellant, *during the progress of the difficulty,* did something, by acts, words, or conduct, that would have produced the difficulty had it been used prior to the difficulty arising, i.e., during the progress of the difficulty, the true reason why the difficulty commenced did not come out. Again, for emphasis, if the facts only reflect or indicate that the deceased started the difficulty, then the issue of provocation is not in the case. See *Trevino v. State,* supra, and *Walker v. State,* 150 Tex.Cr.R. 421, 201 S.W.2d 823 (App.1947).

In reaching its desired result, the majority opinion makes much over the fact that when the appellant went to the decedent's office, to "discuss" the purchase of a piece of real estate, he was then financially embarrassed, i.e., the majority opinion is holding that we may infer from the sole fact that because the appellant was financially embarrassed when he went to the decedent's office, this caused him to provoke the deceased into an argument so that he could kill and rob the deceased. Notwithstanding that under the facts at bar I am unable to agree with this proposition, nevertheless, I must ask: Where is it established that *during the progress of the difficulty* the appellant did something, by acts, words, or conduct, that would estab-

lish that this was the only reason for the commencement of the difficulty. I find that the majority opinion is erroneous because it simply bootstraps by way of too many inferences to satisfy the above principle of law.

I respectfully dissent.