NO. 07-07-0128-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 25, 2010
_____

JOHN KEVIN OAKES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY;
NO. 0955781D; HONORABLE SCOTT WISCH, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**


Appellant John Kevin Oakes appeals from his conviction for murder and the resulting sentence of twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Via four points of error, appellant contends the trial court reversibly erred. We disagree, and affirm.

Background

By indictment, appellant was charged with intentionally or knowingly causing the death of Ronnie Oakes by shooting him with a firearm.[1] Following appellant's plea of not guilty, the case was tried to a jury. The State's evidence showed that on October 21, 2004, appellant fatally shot his brother, Ronnie. Appellant had been estranged from his family but on that evening, happened to run into Ronnie at a local bar. After talking and drinking for a while, appellant and Ronnie left the bar together and went to their mother's home. While in front of the home, appellant argued with his mother and the brothers engaged in a fist fight during which Ronnie yelled that he was going to kill appellant.[2] Appellant went to his truck and retrieved a handgun. Appellant fired a shot in the air and his mother Elma pleaded with her sons to act reasonably.[3] Elma stood between her sons, attempting to block Ronnie from appellant. As Ronnie came toward him, telling him he would stop him from shooting anyone, appellant, with his mother standing just to his left, raised his arm and shot Ronnie in the chest, killing him.

---

[1] *See* Tex. Penal Code Ann. § 19.02 (Vernon 2003). This is a first degree felony punishable by imprisonment in the institutional division for life or for any term of not more than 99 years or less than 5 years. Tex. Penal Code Ann. § 12.32 (Vernon 2003).

[2] Appellant's mother testified that after appellant called her a name, Ronnie kneed appellant in the groin, grabbed him and started hitting him. She testified that she believed Ronnie had killed appellant. During cross-examination, Elma acknowledged she did not know how many times Ronnie hit appellant or what it takes to kill someone with bare hands.

[3] Two neighbors heard this shot and witnessed the events that followed. One of them called 911 as he observed the events. A recording of this call was admitted into evidence.

Over appellant's defensive theory of self-defense at trial, the jury found him guilty as charged in the indictment and assessed punishment at twenty years imprisonment. Appellant timely filed his notice of appeal.[4]

Analysis

*Extraneous Offense*

By his first point of error, appellant contends the trial court reversibly erred by admitting evidence of an extraneous offense occurring outside a bar in Arizona in 2006, some two years after the shooting of his brother. Appellant's objection at trial included relevance grounds, and those under Rules 404(b) and 403.[5] On appeal he similarly contends evidence of the offense was inadmissible because it was too dissimilar and too far removed in time from the offense being tried. We disagree.

In the 2006 offense, appellant was out drinking with several other individuals at the end of the work day. Two brothers, Rick and Robert, began arguing and appellant and another individual attempted to intervene. Appellant told the brothers to "knock it off" and the men got into a vehicle. The two brothers began arguing again and Rick

---

[4] Following appellant's notice of appeal, appellant's attorney died. We abated and remanded the appeal for appointment of a new attorney and an opportunity for re-briefing. *See Oakes v. State,* No. 07-07-0128-CR, 2008 WL 449860 (Tex.App.–Amarillo February 19, 2008, no pet.). No additional briefs were received.

[5] The trial court first sustained appellant's objections with regard to the 2006 offense, finding it "just too remote, too unrelated and it just doesn't fit the clear, unequivocal 404(b) exceptions, based on the current state of the record." After the defense rested, the court reconsidered this evidence with regard to the State's rebuttal and admitted it. The court provided an instruction limiting the jury's consideration of the evidence to rebuttal of a defensive theory and proof of appellant's state of mind at the time and place of the offense.

3

started to reach for Robert. Appellant physically tried to stop him and verbally engaged both brothers, at one point threatening to "cut [Rick's] head off." Appellant then cut Rick in the throat.[6]

*Rule 404(b)*

Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). Appellant received his requested jury instruction on self-defense.[7] An extraneous offense may be used to rebut a defensive theory, such as self-defense, even though this purpose is not mentioned in Rule 404(b). *Crank v. State,* 761 S.W.2d 328, 341 (Tex.Crim.App. 1988); *Halliburton v. State,* 528 S.W.2d 216, 219 (Tex.Crim.App. 1975). Here, appellant testified he was not trying to kill his brother, only to keep his brother from killing him. In order to refute appellant's claim, it became relevant for the State to show that on another occasion appellant used a knife to cut a man, without provocation or threat of harm to himself. Thus, the 2006 offense was

---

[6] Several photographs depicting the injury to Rick were admitted at trial. State's exhibit 94 shows blood on appellant's hands.

[7] A defendant has the burden of producing evidence to raise the issue of self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App. 2003). The State then has the burden of persuasion to disprove the defense. *Id.* This burden does not require the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Id.* When the jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id.*

4

relevant under Rule 401 to rebut appellant's self-defense theory, and his testimony claiming no intent to kill Ronnie. Tex. R. Evid. 401; *Salazar v. State,* 222 S.W.3d 10, 15 (Tex.App.—Amarillo 2006, pet. ref'd); *Lemmons v. State,* 75 S.W.3d 513, 523 (Tex.App.–San Antonio 2002, no pet.); *Robinson v. State,* 844 S.W.2d 925, 929 (Tex.App.–Houston [1st Dist.] 1992, no pet.).

*Rule 403*

Under Rule of Evidence 403, evidence that is relevant may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. When conducting the balancing test under Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule.[8] Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App. 1990) (op. on reh'g).

We have already determined the 2006 offense was relevant to rebut appellant's self-defense theory and his testimony regarding his intent. We also find the 2006

---

[8] A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State,* 215 S.W.3d 870, 880 (Tex.Crim.App. 2007).

offense to be sufficiently similar to the 2004 offense so as to be of significant probative value to rebut appellant's self-defense claims and testimony. *See Rogers v. Peeler,* 146 S.W.3d 765, 776 (Tex.App.–Texarkana 2004, no pet.) (extraneous offenses admissible in self-defense case). In both incidents, appellant was drinking and involved in a confrontation with a person he knew, a co-worker in the 2006 incident and his brother in the 2004 incident. In both incidents, appellant used a weapon capable of inflicting serious bodily injury, a knife in the 2006 offense and a gun in the 2004 offense. In both instances, appellant engaged in an argument with the victim prior to using the weapon. In both altercations, the victim was unarmed. Additionally, while appellant asserts Rick provoked the difficulty in the 2006 incident, we cannot agree the record before us supports the assertion. We find also the two-year length of time between the offenses is not so significant that it weighs against the probative value of the evidence. *See Rogers,* 146 S.W.3d at 776 (finding thirteen and fourteen year separation between the prior violent acts and the act for which the defendant was prosecuted weighed against the probative value of the evidence).

The prejudicial effect of evidence of the 2006 offense was minimized by the court's proper instruction limiting the jury's consideration to its specific purpose. *Morrow v. State,* 735 S.W.2d 907, 912 (Tex.App.—Houston [14[th] Dist.] 1987, pet. ref'd); *Robinson,* 701 S.W.2d at 899. We also find no attempt by the State to over-emphasize or inflame the jury with the extraneous offense. The State was brief in its reference to the 2006 incident and used it only for its limited purpose and as a point of comparison to the offense for which appellant was tried. *Morrow,* 735 S.W.2d at 912. Lastly, although

6

the jury convicted appellant of murder, the twenty-year sentence imposed suggests the jury was not unduly influenced by the introduction of the 2006 offense evidence. Tex. Penal Code Ann. § 12.32 (Vernon 2003) (providing applicable range of punishment for a first degree felony as any term of not more than 99 years or less than 5 years).

After careful consideration of all the facts and circumstances of this case, we find the probative value of the evidence concerning the 2006 offense was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Appellant's first point of error is overruled.

*Jury Charge on Provoking the Difficulty*

Through appellant's second point of error, he contends the trial court reversibly erred by including an instruction on "provoking the difficulty" in the jury charge. Over appellant's objection that no evidence or rational inference supported the instruction, the trial court concluded that appellant's action of obtaining his pistol from his truck and firing it into the air could be seen as provoking his brother to further aggression, particularly in view of the effort required of appellant to remove the pistol from its carrying case in the truck. In its section concerning self-defense, the court's charge effectively instructed the jury, in pertinent part, that a defense of self-defense was not available to appellant if the jury found beyond a reasonable doubt appellant "did display and discharge a firearm" with the intent to produce the occasion for killing Ronnie and to

7

bring on the difficulty with him, that the conduct was reasonably calculated to, and did, provoke a difficulty, and appellant killed Ronnie "in pursuance of his original design."

On appeal, appellant argues there was no showing that his intent by shooting into the air was to induce Ronnie to charge him. Appellant further asserts that because appellant had been "beaten bloody" by Ronnie, there is "no way he could've made a reasonable calculation to provoke the difficulty by firing a shot into the air." Instead, he argues his action of firing a shot into the air was an attempt to abandon the difficulty.

Provoking the difficulty can limit or bar a defendant's right to the benefit of self-defense. Tex. Penal Code Ann. § 9.31(b)(4) (Vernon 2003); *Smith v. State,* 965 S.W.2d 509, 512 (Tex.Crim.App. 1998) (Penal Code § 9.31(b)(4) codifies doctrine of provocation); s*ee Dorsey v. State*, No. 01-08-00411-CR, 2009 Tex.App. LEXIS 8370 (Tex.App.--Houston [1st Dist.) 2009 no pet.); *Harrod v. State,* 203 S.W.3d 622, 628-29 (Tex.App.–Dallas 2006, no pet.) (both applying *Smith*). An instruction on provocation is proper when the evidence, viewed in the light most favorable to giving the instruction, would permit a rational jury to find beyond a reasonable doubt: (1) the defendant did some act or said some words that provoked the attack on him; (2) the act or words were reasonably calculated to instigate the attack; and (3) the defendant did the act or said the words meaning and intending that the defendant would have a pretext for harming the victim. *Smith*, 965 S.W.2d at 513. Each of the factors is a fact question.[9] *Id.* at 514-18.

---

[9] Earlier case law described the prerequisites to giving the charge as follows: viewing the evidence in the most favorable light, a charge on provoking the difficulty is

Here, it is undisputed that Ronnie first physically attacked appellant, and there is evidence he was approaching appellant again when he was shot. Appellant testified that as his brother came charging toward him after he fired the gun, Ronnie said, "You're not going to shoot anybody . . . I'm going to stop you." He testified he believed his brother then intended to make good on his threat to kill appellant, which Ronnie made earlier during their fight. He said his brother was not armed but he believed him capable of killing with his bare hands. A rational jury well could have found appellant's actions of retrieving the gun from his truck and firing it into the air caused his brother to take the action appellant said caused him to fear for his life, and appellant's actions were reasonably calculated to elicit such a response from his brother. *See Smith*, 965 S.W.2d at 517 (act is reasonably calculated to cause an attack if it has a reasonable tendency to do so). Accordingly, we find the evidence readily meets the first two elements of provocation.

Application of the third element of the doctrine of provocation to these facts requires evidence that appellant retrieved and fired the gun for the purpose and with the intent to give him a pretext for shooting his brother. Even though a person does an act, even a wrongful act, that provokes an attack by another, if he lacked the intent that the act would have such an effect "as part of a larger plan of doing the victim harm, he does not lose his right of self-defense." *Smith*, 965 S.W.2d at 518. Intent is a matter of fact,

properly given when: (1) self-defense is an issue; (2) there are facts in evidence which show that the deceased made the first attack on the defendant; and (3) the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury on the deceased. *Matthews v. State,* 708 S.W.2d 835, 837-38 (Tex.Crim.App. 1986).

to be determined from all of the circumstances.  A defendant's intentions are "concealed within his own mind and can only be determined from his words, acts, and conduct." *Id.*

The evidence here, viewed in the light most favorable to the instruction, shows Ronnie and appellant engaged in a fist fight after drinking at a bar.  Appellant acknowledged he was intoxicated. There was a history of animosity between the brothers.  Appellant and his mother also were somewhat estranged.  While appellant and his mother argued, Ronnie took appellant's keys and threw them away.  The brothers began to fight.  Appellant was beaten and both brothers suffered injury.  At one point during the fight, Ronnie told appellant he was going to kill him.  Although appellant testified he could not remember doing so, the evidence was clear that appellant then went to his truck and retrieved a handgun.  He fired a shot in the air, after which Ronnie came straight at appellant and closed the space between them, according to appellant, "in the blink of an eye."  The brothers continued to fight verbally.  The fight ended when appellant shot Ronnie in the chest, causing his death.

The jury rationally could have seen appellant's conduct with the gun as escalating the fight, causing it to continue rather than be abandoned.  Appellant agreed that he intentionally pointed his gun at Ronnie, intentionally pulled the trigger when Ronnie was right in front of appellant, and intentionally shot Ronnie.  Looking to all the circumstances, a rational jury also properly could conclude that appellant retrieved and fired his pistol with the intention of provoking his brother into further fighting, so that Ronnie's response would justify his shooting.  *Smith,* 965 S.W.2d at 519.

Viewing the evidence, as we must, in the light most favorable to the instruction, we find the evidence sufficient to support the trial court's inclusion of the instruction. We overrule appellant's second issue.

*Failure to Grant Mistrial*

In appellant's third point of error, he contends the trial court erred by refusing to grant his request for a mistrial during the State's closing argument. Appellant complains of three statements made by the prosecutor: (1) "I want to preface it by saying that when you call a witness, you're saying three things, number one, you're saying I believe that person"; (2) "[t]he truthful person says "yeah I checked it, so what?' But the untruthful person knows the significance of that act"; and (3) "Marco and Manny. Is the only impeached statement that Defense can point to is the screen? Oh, goodness, oh, no, they disagreed about whether there was a screen or not. Wow. Man, that's self-defense, he didn't do it, not guilty. Is that the only thing that he can point to to contradict his statement?" The trial court sustained appellant's objections to the first two statements, and instructed the jury to disregard them, reminding the jury that what the lawyers say is not evidence. As to the third statement, by which the prosecutor was belittling appellant's efforts to point out contradictions between two witnesses' versions of events, appellant objected that the State was "striking at Defendant over the shoulders of counsel . . . misstating the record and asking the jury to disregard other testimony about contradictions in the statements . . . ." The trial court sustained appellant's objection as to any attack on defense counsel and again instructed the jury to disregard. On all three occasions, the court denied appellant's requests for mistrial.

Considering each of the prosecutor's remarks in their contexts, we do not find them, singly or together, so inflammatory that any prejudicial effect could not be removed by the court's admonition to the jury to disregard them. The court did not err by denying a mistrial. *See Andujo v. State.* 755 S.W.2d 138, 144 (Tex.Crim.App. 1988) (any injury from improper argument ordinarily cured by instruction to disregard). We overrule appellant's third point of error.

*Admission of Photograph*

In appellant's last point of error, he complains of the admission of a particular photograph admitted at trial. The admissibility of a photograph is within the sound discretion of the trial judge. *Ramirez v. State,* 815 S.W.2d 636, 646-47 (Tex.Crim.App. 1991). We may consider several factors in determining whether the probative value of photographic evidence is substantially outweighed by the danger of unfair prejudice. These factors include, but are not limited to: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, and whether the body is depicted naked or clothed. *Robinson,* 844 S.W.2d at 928, *citing Long v. State,* 823 S.W.2d 259, 271-73 (Tex.Crim.App. 1991). The availability of other means of proof and the circumstances unique to each individual case must also be considered. *Id.*

State's Exhibit 54 is a single black and white photograph showing a side view of Ronnie's upper torso and head, an endotracheal tube protruding from his mouth, EKG pads, and certain identifying information. A similar photograph, Exhibit 50, was admitted at trial without objection. However, Exhibit 54 included identifying information not included in the other admitted autopsy photographs. Appellant was charged with intentionally killing Ronnie by shooting him in the chest. The State was required to prove that a death of a particular individual had occurred in the manner alleged. The photograph helped supply such proof and thus had a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence." Tex. R. Evid. 401, *Robinson,* 844 S.W.2d at 927.

The challenged photograph is no more gruesome or prejudicial than other photographs admitted at trial. *See Robinson,* 844 S.W.2d at 928. We find the probative value of the photograph was not substantially outweighed by its possible prejudicial effect. *Id.;* Tex. R. Evid. 403. We find no abuse of discretion in the admittance of Exhibit 54, and overrule appellant's fourth point of error.

Having overruled each of appellant's four points of error, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.