**Opinion issued November 15, 2012**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-10-00395-CR

_____

**GARY PATRICK REEVES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1210212**

---

## MEMORANDUM OPINION ON REHEARING

The State moved for rehearing of our January 26, 2012 memorandum opinion. We grant the motion for rehearing, withdraw our January 26, 2012 opinion, and issue this opinion and judgment in its stead. Our prior judgment

remains unchanged. We dismiss the State's motion for en banc reconsideration as moot.[1]

A jury found appellant Gary Patrick Reeves guilty of murder and assessed his punishment at eighteen years' confinement.[2] In a single point of error, Reeves contends that the trial court erred when it charged the jury on the law of provoking the difficulty, over his timely objection that the evidence did not raise the issue. We reverse and remand for further proceedings consistent with this opinion.

**Background**

Reeves was indicted for, and ultimately convicted of, intentionally and knowingly causing the death of Jeromie Jackson by stabbing him with a deadly weapon, namely, a knife. Reeves testified that he had known Jackson for about a year and that he and Jackson met that evening at their mutual friend Jesse Adams's girlfriend's house. Reeves suggested that the group gathered go out for drinks. When Adams and another declined the invitation, Reeves and Jackson went alone. Reeves's plan was to buy the drinks and pay Jackson for gas so Jackson would drive them to the bar and then drop him home afterwards. However, instead of a ride home, Jackson drove him back to Adams's girlfriend's house about midnight. At that time, Donna Whitfield and Chris Williams were on the front porch, and

---

[1]    *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 & n.2 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[2]    *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (c) (West 2011).

2

when Jackson asked to see Adams, Whitfield went into the house to get him. Reeves also testified that after Whitfield left, Jackson asked for ten dollars to buy a crack rock from Adams. When Reeves declined, Jackson asked him how much he was going to pay for the gas and when Reeves replied "five dollars," Jackson yelled that his truck was not moving for five dollars worth of gas. Reeves then decided that he could do without a ride home after all; he could stay with his aunt who lived nearby. Jackson pressed further for the gas money, and the argument escalated to such a degree that Whitfield opened a window and scolded them to keep it down so as not to wake her baby.

Jackson, according to Reeves, became increasingly agitated, and when Jackson approached Reeves, threatening, "You're going to make me take all your money," the two men began to wrestle. Reeves admits that after Jackson had him pinned to the ground, in order to get free, he bit Jackson on the face. Shortly thereafter, Adams came out of the house and broke up the fight. According to Reeves, this was the first time he and Jackson had fought. Reeves testified that at this point, Jackson was clearly enraged because Reeves had bit him on the face and as Adams walked Jackson out to the sidewalk, Jackson turned back to Reeves and screamed, "I'm going to kill your little ass when I get my hands on you, Jesse ain't going to be around all the time."

3

Jackson, who had by this time been asked by several folks at the house to leave, drove off. Reeves stayed behind to give Jackson time to leave the neighborhood and to look for a cell phone he had lost during the fight. A few minutes later, as Reeves and Adams walked out of the driveway, Jackson ran at Reeves full speed, tackling him and pinning him against the fence. Jackson "start[ed] swinging wildly, throwing punches from everywhere." According to Reeves, he tried unsuccessfully to block Jackson's punches. Although he made several requests for help, Adams refused his repeated pleas.

Jackson picked Reeves up, slammed him to the ground and started reaching for Reeves's pockets to take the money out. The two men continued to fight while Adams watched. According to Reeves, Jackson then grabbed his throat and began to choke him. Fearing for his life, and gasping for air, Reeves reached for the knife he carried in his pocket, and he started swinging. Reeves testified that he did not know how many times he struck Jackson, only that he was eventually able to get away from him.

The jury was offered a decidedly different version of events by other eyewitnesses. Whitfield testified that she and Williams were sitting in front of the house in Adams's truck and when Jackson and Reeves pulled up in front of the house, both men were talking loudly about gas money. The men got out of the truck and continued their arguing. Whitfield testified that Jackson and Reeves

4

began to wrestle soon thereafter, but she really could not see what was going on due to her poor eyesight. At that point, Williams got out of Adams's truck and broke up the fight, but the two men resumed fighting shortly thereafter. Whitfield told both Jackson and Reeves to stop fighting and get out of her sister's yard. After Williams broke up the fight for a second time, Whitfield heard Jackson state that he was "through with it" and "don't want to fight" and drove off. She testified that after Jackson left, Reeves picked up his jacket and phone and as he was leaving, encountered Jackson again who had evidently walked back to the house. The two men began to fight again. At that point, Whitfield went inside the house to get her sister, but when she looked out the open window, she heard Jackson say that Reeves had stabbed him and heard Reeves say afterwards: "Y'all not going to keep messing with me, y'all not going to make me feel like . . . a punk."

Adams, the neighborhood friend of both Reeves and Jackson, testified that Jackson called him when he and Reeves were leaving the bar to tell him that they were going to stop by and see him. Adams testified that Jackson sounded excited on the phone and that he could hear Reeves talking in the background. According to Adams, Jackson and Reeves were arguing over gas money.[3]

By the time Jackson and Reeves arrived at the house, Adams was in bed with his girlfriend, but his girlfriend's sister, Whitfield, and her friend, Williams,

---

[3]     Reeves said that he was resting his eyes during the drive and he denied that the phone call ever took place.

5

were out in the front of the house. Although Reeves testified that Adams broke up the first fight, Adams testified that he did not come outside until after that fight was over and Jackson was in the process of moving his truck from the driveway. According to Adams, he heard a commotion, went outside and he saw Reeves standing in the yard by Adams's truck and Jackson moving his truck from driveway. Adams testified that Jackson parked his truck down the street and then walked back to the house and stood at the gate, at which point Adams asked the two what was going on. Jackson, his face bleeding, told Adams that Reeves bit his nose. Reeves countered that Jackson was "tripping" and was asking for more money. Adams also testified that Reeves told him, "Jesse, you better get him, I'm going to hurt him, do something bad to him." Adams later admitted that he had told the police that Reeves had actually said, "I'm going to kill him, I'm going to kill him." Adams then noted that since Reeves was "not a violent dude," he did not take him seriously at the time. "He's not a violent person at all." Adams also testified that Jackson, who was standing at the gate, was not violent either and was a good guy, but Reeves had pushed him too far when he bit his face. According to Adams, had Jackson not suffered the face wound, he probably would have just gone home. Instead, Jackson threatened: "I'm going to get him, I'm going to get him." Adams later admitted that after he moved his truck, Jackson returned to the house only because he wanted to fight.

6

Adams testified that he walked Reeves to where Jackson was waiting on the sidewalk in an attempt to resolve the situation. Jackson and Reeves, however, started pushing each other and then wrestling. Adams testified that he thought that Reeves was just punching Jackson, until Jackson cried, "He's stabbing me Jesse," at which point, Adams tried to stop the fight, but before he could do so, Reeves took another swing at Jackson and stabbed him in the back. When told, "[Y]ou killed Jeromie," Reeves replied, "If you touch me Jesse, I'm going to kill you, too. I'm going to stab you, too." At that point Adams tended to Jackson and called 9-1-1. When he looked back, Reeves was gone. Reeves surrendered to police a few days later.

When asked why he did not try to stop the fight sooner, Adams replied that "It was Jeromie's decision [to fight]. He wanted to fight." Adams also testified that he did not see Jackson with any type of weapon that night and assumed that they were simply going to fight it out with their fists.

Reeves objected to the inclusion of an instruction on the law of provoking the difficulty as a qualification on his right to self-defense. His objection, however, was overruled and the jury was instructed on the law of provoking the difficulty. The jury found Reeves guilty of murder and assessed his punishment at eighteen years' confinement.

**Discussion**

In his sole point of error, Reeves contends the trial court erred by overruling his objection to the jury charge on provocation. Reeves argues that the court's inclusion of such an instruction was improper because there was no evidence to support the proposition that he provoked the difficulty.

### A. Applicable Law

Our analysis first requires an initial determination of whether error actually exists in the charge. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Only if the court finds error do we proceed to the second step that requires examination of harm resulting from the error. *Olivas*, 202 S.W.3d at 143–44; *Almanza*, 686 S.W.2d at 171.

Generally, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011). One limitation on the right to self-defense is the doctrine of provocation, also known as "provoking the difficulty" or "provoking the attack." *See Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). The doctrine embodies a concept in criminal law that can act as a total bar against a defendant's right to self-defense. *Id.*

8

A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Id.* at 513. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id.* at 514. Our inquiry is whether "a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction." *Id.* Each element is a fact question and may be established by circumstantial evidence. *Id.* at 513–19. Unless raised by the facts, however, a charge on provoking the difficulty is an unwarranted limitation on the right of self-defense and error. *Matthews v. State*, 708 S.W.2d 835, 837 (Tex. Crim. App. 1986).

## B.    Provoking the Difficulty

Here, the first two prongs of the test are met if a rational jury could have found beyond a reasonable doubt that some act or words of Reeves actually caused Jackson to attack him and that those words or acts were "reasonably capable of

causing an attack, or . . . ha[d] a reasonable tendency to cause an attack." *See Smith*, 965 S.W.2d at 514, 517.[4]

The State argues that a rational jury could have found beyond a reasonable doubt that Reeves did or said something that caused Jackson to attack him and that those words or acts were reasonably capable of causing an attack based upon both direct and circumstantial evidence. Although Adams testified that Reeves threatened to kill Jackson, Reeves did not make those threats until *after* the fighting had started. Similarly, Reeves testified that when he and Jackson were wrestling in the front yard, Jackson pinned him to the ground at one point, and he bit Jackson on the face in order to get free. Based upon this uncontroverted testimony, both Reeves's threat and the bite occurred *after* he and Jackson were

---

[4]   After arguing on appeal that the provocation instruction was proper under *Smith v. State*, 965 S.W.2d 509 (Tex. Crim. App. 1998), the State argues for the first time on rehearing that this Court erred in applying *Smith* and should have applied the "raised by the evidence" standard set forth in section 2.03 of the Penal Code. TEX. PENAL CODE ANN. § 2.03(c) (West 2011) (stating defensive jury instruction should not be submitted to jury unless "evidence [was] admitted supporting the defense"). It is a well-settled principle of law that a party cannot invite error and then complain of it. *See Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) ("[A] party cannot take advantage of an error that it invited or caused."); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). Having previously argued to this Court for the application of the *Smith* standard, the State is barred from arguing for the first time on rehearing that this Court (and necessarily, the trial court) erred in applying *Smith* and should have, sua sponte, applied the "raised by the evidence" standard.

physically fighting in the front yard. Such threats and conduct could not have provoked a fight that was already in progress.

With regard to its circumstantial-evidence argument, the State argues that while we do not know what happened before Jackson and Reeves arrived at Adams's girlfriend's house, there is evidence in the record that they were arguing over gas money before and after they arrived at the house, and the jury could have inferred from this that Reeves did some act or used some words which provoked the attack on him and that such acts or words were reasonably calculated to provoke the attack. The State further argues that Reeves's intent to provoke Jackson as a pretext for murder can be gleaned from the fact that (1) Reeves had a knife on him when he accosted Jackson at the gate and (2) Reeves stabbed Jackson in the back after Jackson was already incapacitated on the ground. We disagree that this evidence justifies the instruction.

First, although some provoking acts or words can by their own nature be sufficient to support a jury finding of provocation, testimony that Jackson and Reeves were arguing over gas money, albeit loudly and excitedly, is insufficient on its own to support the instruction. This is particularly true given the fact that there is no evidence that Jackson and Reeves were hurling insults at one another or using inflammatory language. *Cf. Smith*, 965 S.W.2d at 517 (citing *Bateson v. State*, 80 S.W. 88, 93 (Tex. Crim. App. 1904) for proposition that "if the jury believed that

11

appellant called deceased a son of a bitch, this would certainly be sufficient to provoke an assault by deceased").

Second, testimony that Reeves had a pocket knife on his person at the time of the fight and that he stabbed Jackson in the back one time as Adams was trying to break up the fight is not sufficient under the facts of this case to demonstrate the requisite intent. The cases relied upon by the State are factually distinguishable. Unlike in those cases, Reeves did not make a special trip to get the knife before seeking Jackson out. *See Rogers v. State*, 159 S.W. 44, 49 (Tex. Crim. App. 1913) (stating that after altercation, defendant retrieved pistol before seeking out complainant); *Robins v. State*, No. 01–99–00451–CR, 2002 WL 1980887, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2002, pet. ref'd) (not designated for publication) (stating that evidence that defendant drove home to pick up handgun before seeking out complainant was evidence of intent of creating pretext for shooting); *Gill v. State*, 01-98-00674-CR, 1991 WL 681971, *2 (Tex. App.— Houston [1st Dist.] Sept. 2, 1999, pet. ref'd) (not designated for publication) (finding evidence of intent of creating pretext for shooting when defendant retrieved pistol from her vehicle, pursued complainant, shot her from behind and stated, "Man, I told that bitch not to be fucking with me"). Reeves had the pocket knife with him earlier that day and evening. There is nothing in the record to suggest that he was carrying it with him that day because of Jackson and the mere

fact that Reeves had the knife on his person at the time of the fight is not evidence of intent to create a pretext.

Furthermore, although the State contends, based upon Adams's testimony, that Reeves stabbed Jackson in the back after Jackson was already incapacitated on the ground, this version of events is not fully supported by the record. Adams testified that Jackson was on the ground, and Reeves was on top of him, stabbing him, and when he tried to pull Reeves away, Reeves took one final swing at Jackson, stabbing him once in the back. Although evidence of overkill can illuminate the intent element of provocation under certain circumstances, the circumstances of the case cited for this proposition are a far cry from the one errant strike in the present case. *See Smith*, 965 S.W.2d at 518 (citing *Matthews v. State*, 708 S.W.2d 835, 838 (Tex. Crim. App. 1986) for proposition that evidence that defendant stabbed victim twenty-four times is considered in establishing intent).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). We permit juries to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Id.*; *see Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007) (stating that "courts of appeals should . . . determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light

most favorable to the verdict"). The jury is not permitted to draw conclusions based on speculation because doing so is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 16; *see also Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim. App. 2006) (stating that when evidence "gives rise to at least two, reasonably equal, plausible inferences . . . it is clearly the jury that makes the choice of which inference to accept"). Although a jury can rely upon wholly circumstantial evidence to find provoking acts or words, *Smith*, 965 S.W.2d at 515–16, such evidence must create more than a suspicion because juries are not permitted to reach speculative conclusions. *Louis v. State*, 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref'd). Here, the circumstantial evidence, taken as a whole, is such that a finding by the jury of provoking acts or words on the part of Reeves's would amount to nothing more than impermissible speculation.

We conclude that viewing the evidence in a light most favorable to giving the instruction, the evidence was insufficient for a reasonable jury to find the necessary elements of provocation beyond a reasonable doubt, see *Smith*, 965 S.W.2d at 516–19, and we hold that the trial court erred by instructing the jury that it should find against Reeves on his self-defense claim if it found beyond a reasonable doubt that Reeves provoked the difficulty.

## C.    Harm

Because appellant objected, we will reverse if the erroneous submission of the provocation jury instruction was "calculated to injure [his] rights."  TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006).  This means no more than that there must be *some* actual harm to the accused from the error.  *Almanza*, 686 S.W.2d at 171.  Under this test, any harm, regardless of degree, is sufficient to require reversal.  *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Wells v. State*, 319 S.W.3d 82, 94 (Tex. App.—San Antonio 2010, pet. ref'd).  To gauge harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.  The harm question in this particular case is "whether, in the absence of the provocation instruction, there would have been any chance that the jury would have found that [appellant] acted in self-defense." *Flores v. State*, No. 06–05–00023–CR, 2008 WL 41388, at *4 (Tex. App.— Texarkana Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication).

A person may use deadly force in self-defense "when and to the degree the actor reasonably believes the deadly force is immediately necessary (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder,

15

sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE ANN. § 9.32(a)(2) (West 2011) (providing for deadly force in defense of person).

Self-defense is an issue of fact to be determined by the jury. The jury, as the fact-finder, is the sole judge of the weight and credibility of the evidence. *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). A jury's guilty verdict is an implicit finding rejecting the defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Although there was evidence that was inconsistent with Reeves's theory of self-defense, we conclude that the evidence of guilt was not so overwhelming that the erroneous provocation instruction was harmless. Reeves testified to facts that, if believed, supported his defense of self-defense. As the fact-finder, the jury was free to reject some or all of Reeves's version of the events, and having done so, the jury could rationally have found all of the essential elements of murder beyond a reasonable doubt. Nevertheless, we cannot determine if the jury actually rejected Reeves's self-defense claim because they disbelieved his testimony or if the jury was prevented from reaching his self-defense claim due to the erroneous submission of the provocation instruction. The provocation instruction's presence in the jury charge implied that there was some evidence to support every element of the provocation doctrine when there was not. *See McCandless v. State*, 57 S.W.

16

672, 675 (Tex. Crim. App. 1900) (holding that giving of provocation charge without sufficient evidence was harmful error because it was "calculated to make the jury believe that, in the opinion of the judge, there was evidence tending to show that appellant brought on the difficulty for the purpose of slaying his adversary"); *see also Tave v. State*, 620 S.W.2d 604, 605–06 (Tex. Crim. App. [Panel Op.] 1981) (concluding record was devoid of evidence supporting "completely unwarranted" provocation; reversing and remanding). The erroneous submission of the provocation instruction is particularly troubling in this case because Reeves's entire defense rested on the theory of self-defense; thus, any erroneous instruction that limited his self-defense theory was likely to be harmful. *See Mendoza v. State*, 349 S.W.3d 273, 284 (Tex. App.—Dallas 2011, no pet.) (holding that erroneous submission of provocation instruction was harmful and stating that by giving erroneous instruction, trial court essentially deprived appellant of his entire defense—self-defense).

We sustain Reeves's sole point of error.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial. *See*

TEX. CODE CRIM. PROC. ANN. art. 44.29(a) (West Supp. 2012).



Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).