**Affirmed as Modified and Opinion Filed January 19, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00925-CR

**EUGENE CAMARILLO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F15-24066-Y**

## MEMORANDUM OPINION
Before Justices Francis, Evans, and Boatright
Opinion by Justice Francis

A jury convicted Eugene Camarillo of aggravated assault with a deadly weapon and assessed punishment, enhanced by a prior felony conviction, at forty-five years in prison. In six issues, appellant complains (1) the trial court erred by giving supplemental instructions to the jury during deliberations and by denying his requests for a mistrial, (2) the evidence is legally insufficient to support the jury's rejection of his claim of self-defense, and (3) the trial court erred by failing to instruct the jury on the lesser-included offense of assault. For reasons that follow, we overrule appellant's issues. The State has notified us of two errors in the judgment. We modify the trial court's judgment to correct those errors and affirm the judgment as modified.

Leticia Cermenio and Louis Granado ended their relationship after dating for twelve years. They remained friends, and Granado also stayed in contact with Cermenia's teen-age daughter, A.C., with whom he was particularly close. In October 2014, Cermenio began dating appellant. Evidence was conflicting as to whether the two were still together in May 2015 when Cermenio allowed Granado to stay at her home temporarily because he had no place to live. Regardless, Cermenio did not tell appellant that Granado was staying with her.

On June 4, 2015, Cermenia told Granado she wanted him to leave her house by that afternoon. After Granado got off work, he went back to the house. Cermenia was not there. A.C. had invited several friends over to practice a dance for her upcoming quinceanera so Granado went to Cermenia's bedroom to allow the children to practice in the living room. He fell asleep on the bed while washing clothes and watching television.

When A.C.'s friends began arriving, two of them saw a man suspiciously walking around the house, peering through the windows. When the man saw them, he walked off. About fifteen minutes later, the man jumped the backyard fence and burst through the back door into the house. The girls testified the man was the same person who had been looking through the windows. A.C. identified the man as appellant.

A.C. said appellant looked angry when he entered the house, said nothing, and walked quickly down the hallway to her mother's bedroom. A.C. "heard yelling" and followed appellant. When she opened the bedroom door, she saw Granado standing in the far corner of the room holding his chest; she said he looked scared. Appellant was standing in another area of the room and he looked angry. A.C. ordered appellant to leave. As he was leaving, she noticed he had a pocket knife in his hand with blood on the blade. A.C. said appellant "jerked" the knife at her. After appellant left, A.C. realized Granado had been stabbed in the chest. She told her friends to call 911.

Granado testified he was asleep when he heard the bedroom door open and then felt a jab to his chest, which "knocked the air" out of him. Granado rolled off the bed to the corner of the room to figure out what was going on. He looked down and saw blood coming from his chest and looked up to see a man, later identified as appellant, holding a pocket knife. Granado realized appellant had stabbed him. Appellant said something "like, do you want to "F" with my girlfriend, or do you want to "F" with me?"

Granado said he was in fear for his life and believed appellant might have "finished [him] off" if A.C. had not rushed into the room. Granado was transported to the hospital, where he stayed for two weeks. He sustained a stab wound to his chest that punctured his lung and missed his heart by an inch. He had two other stab wounds, one to his elbow and another to his upper back left leg. Granado said he had never seen the knife appellant used to stab him. Granado carried a utility knife for his work as an electrician but said he did not have it with him when he was attacked. A crime scene photograph showed the utility knife on the ironing board in the bedroom. On cross-examination, he agreed a photograph seemed to show blood dripping down the wall near the ironing board, but he denied using his knife in the attack. He also acknowledged he did not tell police in his statement that he was sleeping at the time of the attack and agreed photographs appear to show a struggle occurred.

Police on the scene saw blood in the entry way and in the bedroom. Detective J.D. Hammett said he visited appellant in the hospital and saw defensive wounds on this arms. He interviewed Cermenia and the other people at the house that day. Appellant was eventually arrested four months later at Cermenia's house.

Cermenia testified for the defense. She said she and appellant were in a relationship and she considered him her husband. She was afraid of Granado because of her past history with him and told appellant about Granado's reputation for being violent. Cermenia told the jury it was

–3–

her understanding Granado attacked appellant with Granado's knife; the description of the knife sounded like one owned by Granado. She and appellant were dating in June 2015 and he had permission to be in her house.

Cermenia's testimony conflicted with her statement given to the police two weeks after the stabbing. In that statement, she blamed appellant for the stabbing. She told police she stopped seeing him a month earlier after asking him to leave a party. She said appellant wanted to be with her all the time and she "didn't have time for that." At trial, she said she gave the police the statement blaming appellant because of her fear of Granado but acknowledged never telling the police or prosecutors of that fear. She denied changing her story after appellant learned what she had told the police.

In his fifth issue, appellant challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. Appellant argues Granado's testimony that he was the victim of an unprovoked attack is not credible and that it was a reasonable deduction from the evidence that appellant used Granado's knife in self-defense. As support, he relies on (1) Granado's testimony that he had a pending criminal case in Dallas County that prosecutors had agreed to dismiss after a certain period of time and certain conditions and (2) Cermenia's testimony that Granado had a violent reputation, the description of the knife used to stab Granado sounded like a knife that belonged to Granado, and it was her understanding that Granado attacked appellant. Finally, he argues A.C. and her friends were not in the bedroom and could not testify as to what actually occurred.

As charged in this case, a person commits an assault if he intentionally or knowingly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2017). An assault becomes aggravated when the person uses or exhibits a deadly weapon during the commission of an assault. *Id*. § 22.02(a)(2) (West 2011).

–4–

With certain exceptions, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another (1) if he would be justified in using force against another under section 9.31 and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a); *see also Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (term "reasonably believes" in section 9.32 encompasses traditional holding that suspect is justified in defending against danger as he reasonably apprehends it). "Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. TEX. PENAL CODE ANN. § 9.01(3). "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42) (West Supp. 2017).

The defendant has the initial burden of producing evidence to raise self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). If the defendant produces some evidence, the State has the burden of persuasion to disprove the raised defense. *Zuliani*, 92 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914. The State is not obligated to offer evidence refuting a claim of self-defense; rather, the State is required to prove its case beyond a reasonable doubt. *Zuliani*, 92 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Zuliani*, 97 S.W.3d at 594.

In reviewing the sufficiency of the evidence to support the factfinder's rejection of self-defense, we do not look at whether the State presented evidence refuting self-defense. Rather, we determine whether, after reviewing all the evidence in the light most favorable to the verdict,

any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. In making this review, we keep in mind that the trier of fact is the sole judge of the weight and credibility of the evidence. *See Kirk v. State*, 421 S.W.3d 772, 776 (Tex. App.—Fort Worth 2014, pet. ref'd).

Here, the evidence showed appellant went to Cermenia's house and peered through the windows before jumping the backyard fence and bursting through the back door. He stalked down the hallway to the bedroom where Granado said he was sleeping and stabbed him in the chest. Just moments later, A.C. went into the bedroom to find an angry appellant and an injured Granado. From this evidence, a rational jury could have concluded appellant went to Cermenia's home with a knife and, in an unprovoked attack, stabbed Granado. Although appellant's defense was that Granado attacked him with Granado's knife, the jury could, and did, reject his self-defense claim after resolving any conflicts and weighing the witnesses' credibility. Reviewing all the evidence, we conclude a rational jury would have found the essential elements of the offense beyond a reasonable doubt and also would have found against the appellant on the self-defense issue beyond a reasonable doubt. We overrule the fifth issue.

In his sixth issue, appellant contends the trial court erred in refusing to submit a jury instruction on the lesser-included offense of assault. Appellant argues that with the instruction, the jury would have been allowed to believe he went to the "confrontation empty-handed and assaulted Granado, but did so without the intent to use a deadly weapon." He contends this "would have allowed the jury to believe the testimony that the deadly weapon belonged to Granado and that appellant came to assault Granado, but that he did so without a weapon."

A defendant is entitled to an instruction on a lesser-included offense if the proof necessary to establish the charged offense also includes the lesser offense and if the record

contains some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The second step is a question of fact and is based on evidence presented at trial. *Id.* at 383. A defendant is entitled to such an instruction if some evidence exists from any source raising the issue, regardless whether the evidence is weak, impeached, or contradicted. *Id.* We review the trial court's decision for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

Here, the difference between the charges of assault and aggravated assault is whether a deadly weapon was used or exhibited. And, there is no evidence, from any source, that appellant did not use or exhibit a deadly weapon. The evidence showed appellant stabbed Granado multiple times, including a stab wound to his chest that punctured his lung and narrowly missed his heart. Appellant's argument is premised on the theory that the knife belonged to Granado and he did not go into the room with the intent on stabbing Granado. But, regardless of who the knife belonged to, the evidence showed appellant used or exhibited it during the offense. Because the record does not support the theory that appellant caused Granado bodily injury but did not use a deadly weapon, the trial court correctly determined assault was not a valid, rational alternative to the charged offense. We overrule the sixth issue.

The remaining four issues involve supplemental instructions given to the jury once it indicated it could not reach a verdict. Appellant argues the instructions pressured a hold-out juror to change his or her vote to guilty, thus coercing a unanimous decision. He argues the trial court should have instead granted a mistrial. After reviewing the record, we cannot agree.

The record shows the jury began deliberating on a Friday afternoon at 4:40 p.m. At 6 p.m., the trial court went on the record and read the jury's first note: "Does this have to be a unanimous decision? We are at 11 to 1." The court proposed the following response: "Yes, your

verdict must be unanimous.  You have received all the law and evidence in this case.  Please continue your deliberations."  Defense counsel objected the response implied "that one believes one way that is different from the eleven" and "has to change his or her vote."  Defense counsel suggested the court submit, "You have all the instructions you need in the Court's charge."  The trial court overruled the objection and gave the instruction.

The jury then deliberated from 6:10 p.m. to 7 p.m., before sending a second note: "Judge, we are still at 11/1 guilty.  How do we move forward, please?"  With no objections, the trial court responded as follows:

> Members of the jury, if this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury.  The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time.  Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury.

> With this additional instruction, you are requested to continue your deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience.  Don't do violence to your conscience but continue deliberating.

After sixteen minutes of further deliberations, the jury sent its third note:  "Judge, we apologize.  We're not able to arrive at a unanimous decision.  However, the one person that strongly feels Eugene is not guilty may suffer violence to their conscience if they change their mind."   The trial judge decided to send the jury home for the weekend and return at 9 a.m. Monday, stating she did not believe an *Allen* charge was necessary "at this point."  Defense counsel asked for a mistrial. The judge denied the motion, stating, "They just started deliberating at 4:40.  It's 7:15 now.  I'll allow them to deliberate on Monday.  And depending on when they either come back or send out another note or what it says, I'll entertain that."

The jury returned the following Monday morning and sent the following note:  "Is all the blood on the bed from Louis?  Did Eugene sustain any injuries?"  Without objection, the trial

court responded that the jury had received all the law and evidence in the case and to continue deliberating.

After continuing deliberations, the jury sent its final note, which read: "Judge, once again, we apologize. We are not able to arrive at a unanimous decision. We will have to allow another jury to try this case." The note is time-stamped 10:10 a.m. The trial judge stated her intent to respond with an *Allen* charge. Defense counsel objected, saying it sounded from the language of the note that "they have committed themselves to being deadlocked," and requested a mistrial. The judge denied the mistrial, but said if the jury had no resolution after a "reasonable period," she would reconsider the motion. At 10:50 a.m., the judge issued the following supplemental charge:

> MEMBERS OF THE JURY;
>
> This case has been tried very ably by both sides, and all the evidence either side has brought has been placed before you for your consideration, and a Jury must decide this case.
>
> You have been selected by a very careful process of selection and have listened attentively and observed carefully the evidence throughout the trial.
>
> Although the verdict of the Jury must represent the opinion of each individual juror, it by no means follows that the opinions of individual jurors held at one time may not be changed through jury deliberations by conference with fellow jurors. The very object of the jury system is to secure unanimity by comparison of views and consideration of the opinions of one's fellow jurors. Each juror should listen, with deference, to the arguments of the other jurors, and no juror should go into the Jury Room with a blind determination that the verdict of the entire jury should represent his or her opinions of the case or with closed ears to the arguments of other jurors equally honest, intelligent and dedicated. Do not do injustice to your own personal opinions but do listen and consider the opinions of your fellow jurors in your deliberations upon a unanimous verdict.
>
> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

–9–

The law provides that the jury shall be kept together for such a time as to render it altogether improbable that it can agree, and only the Judge of this Court can make that determination.

With this additional instruction, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Don't do violence to your conscience, but continue deliberating.

The jury returned a guilty verdict twenty-five minutes later, at 11:15 a.m.

In his first issue, appellant contends the trial court erred in overruling his objection to the supplemental instruction given after the first jury note asked whether the decision had to be unanimous and informing the court of an 11-1 split. The instruction informed the jury the verdict had to be unanimous. A jury in a criminal case must be unanimous in finding every constituent element of the charged offense. *See Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007). Thus, the trial court's response to the first jury note correctly responded to the jury's question. Additionally, the trial court properly referred the jury to its previous instructions, stating they "received all the law and evidence in this case." We overrule the first issue.

The remaining three issues concern the trial judge's actions once the jury informed her it was deadlocked. In his second and third issues, appellant complains the trial judge erred in denying his motions for mistrial after (1) the jury's third note saying it was deadlocked and stating "one juror would suffer violence to their conscience if they were to change their mind" and (2) after the jury's fourth note in which it again stated they were deadlocked and unable to arrive at a unanimous decision, and that another jury would have to try the case. In his fourth issue, he contends the trial judge erred in overruling his objection to the *Allen* instruction given after the fourth jury note because it was "coercive" and violated due process and his right to a fair trial under the United States Constitution. He does not separately address these issues but argues them as one.

–10–

An appellate court reviews a trial court's ruling on a motion for mistrial for an abuse of discretion and must uphold the ruling if it is within the zone of reasonable disagreement. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). After a case is submitted to the jury, the court may, in its discretion, discharge the jury and declare a mistrial where it has deliberated so long that it becomes altogether improbable that it will agree. TEX. CODE CRIM. PROC. ANN. art. 36.31 (West 2006); *Montoya v. State*, 810 S.W.2d 160, 167 (Tex. Crim. App. 1989); *Draper v. State*, 335 S.W.3d 412, 416 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). However, there is no time limit on the length of time a jury may deliberate. *Draper*, 335 S.W.3d at 416. Length of time the jury may be held for deliberation rests in the trial court's discretion. *Montoya*, 810 S.W.2d at 166. When reviewing the trial court discretion in this regard, we consider the length of the trial and amount of evidence presented to the jury. *Howard v. State*, 941 S.W.2d 102, 120 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014).

The record shows the jury first indicated trouble reaching a verdict after deliberating only one hour and twenty minutes, asking the court if its verdict needed to be unanimous. Over the next sixty-six minutes, the jury sent out two more notes, both indicating jurors were stuck on an 11-1 vote. After the second of these notes, appellant moved for mistrial, but the trial court denied that request and instead sent the jury home for the weekend, noting they had been deliberating only two and a half hours. A trial court is not bound to declare a mistrial at the first sign of jury impasse. *Howard,*, 941 S.W.2d at 120. The jury returned the following Monday and sent a note regarding the evidence. After the trial court responded, they deliberated for no more than an hour before sending a note informing the court they were unable to arrive at a unanimous decision and another jury would have to hear the case. At this point, the trial court gave a full *Allen* charge and denied defense counsel's request for a mistrial. The trial in this case took three

days, including two days of testimony with eight witnesses and fourteen exhibits. The jury had to decide whether appellant's knife attack on Granado was in self-defense. Given the nature of the case, the length of the trial, and the amount of evidence presented, we cannot conclude the trial court abused its discretion by denying the motions for mistrial and ordering the jury to continue deliberations. *See Melancon v. State,* 66 S.W.3d 375, 383–84 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (op. on reh'g en banc) (no abuse of discretion in ordering jury to continue deliberating when it reported deadlock after four and a half hours in aggravated robbery trial); *Matthews v. State,* 691 S.W.2d 2, 5 (Tex. App.—Beaumont 1984), *aff'd on other grounds,* 708 S.W.2d 835 (Tex. Crim. App. 1986) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after ten hours of deliberation following trial with seventeen witnesses, forty-nine exhibits, and multiple issues for the jury to resolve); *Moses v. State,* No. 14–99–00377–CR, 2004 WL 78162, at *1 (Tex. App.—Houston [14th Dist.] Jan. 20, 2004, no pet.) (mem. op., not designated for publication) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after eight hours of deliberation following four-and-a-half-hour bribery trial).

Nor can we conclude the trial court erred by giving the full *Allen* charge after the jury had been deliberating for three and a half hours. An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. *Allen v. United States*, 164 U.S. 492, 501 (1896); *Barnett v. State*, 189 S.W.3d 272, 276 n.13 (Tex. Crim. App. 2006). The charge reminds the jury that if they are unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *Allen*, 164 U.S. at 501; *Barnett*, 189 S.W.3d at 276 n.13. While such a charge is permissible in both the federal system and Texas courts, a trial court must be careful to word and administer the charge in a noncoercive manner. *Barnett*, 189 S.W.3d at 276 n.13.

–12–

An *Allen* charge jury instruction will constitute reversible error only if, on its face, it is so improper as to render jury misconduct likely or jury misconduct is demonstrated to have occurred in fact. *West v. State*, 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003, pet. ref'd). To prevail on a complaint that an *Allen* charge is coercive, an accused must show that jury coercion or misconduct likely occurred or occurred in fact. *Id.* An *Allen* charge is unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case. *Arrevalo v. State*, 489 S.W.2d 571 (Tex. Crim. App. 1973); *West*, 121 S.W.3d at 107–08.

Although appellant argues the judge "influenced the jury's vote by telling one juror that he or she had to change his principled moral decision" and coerced unanimous decision, the record does not support his argument. While the judge clearly knew the numeric division and the one vote was to acquit, the charge did not pressure the one holdout juror into reaching a particular verdict. The charge did not identify the holdout juror or suggest, implicitly or explicitly, that he was the person who needed to reexamine his perspective. *Howard*, 941 S.W.2d at 123–24 (although trial judge was aware of the numerical division when he gave supplemental *Allen* charge, he "did not directly address the minority juror and did not shade the instruction with coercive nuance;" thus, in context, the charge was noncoercive). Rather, the instruction stated the verdict represented "the opinion of each individual juror" while acknowledging that opinions can change through the deliberation process. It instructed all jurors to listen, with deference, to the arguments of other jurors, but to do so without doing injustice to one's own opinions. It also, appropriately, informed the jury that if it did not reach a decision, another jury would be impaneled to decide the same questions. Having reviewed the supplemental charge, we conclude it was not coercive. We overrule the second, third, and fourth issues.

Finally, although the record reflects appellant pleaded true to an enhancement paragraph alleged in the indictment, the judgment lists the notation "N/A" in the sections for "Plea to 1st Enhancement Paragraph" and "Findings of 1st Enhancement Paragraph." We have the authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to reflect appellant pleaded true to the enhancement paragraph and the paragraph was found true.

As modified, we affirm the trial court's judgment.


/Molly Francis/
_____
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
160925F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EUGENE CAMARILLO, Appellant

No. 05-16-00925-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F-1524066-Y.
Opinion delivered by Justice Francis;
Justices Evans and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect a plea of True and a finding of True to the 1st Enhancement Paragraph.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered January 19, 2018.